This is a suit for workman's compensation at the rate of $20 a week, for a period not to exceed 400 weeks, beginning June 18, 1938, less a credit of $160 paid to plaintiff by defendant, based on the allegation that plaintiff, while disconnecting a gas pipe under the floor of a derrick in his capacity of "rough neck" for defendant, suffered an accident which resulted in almost total impairment of sight in his right eye, and serious impairment of sight in his left eye, rendering him totally disabled from doing any work for which he is fitted and trained. It is claimed by plaintiff that gas blew out of the pipe at the connection with great force, blowing dust and rust in his face and eyes, and throwing him back a few feet, causing his head to strike a wooden post or some object, "the back part of his head coming into contact with said object, rendering him unconscious for several minutes;" that he has severe and constant head pains and aches on account of *Page 198 
the blow and injury to his head in said accident.
The defendant admits that plaintiff was in its employ as a "rough neck" on the date of the alleged accident, and admits that plaintiff's wages were sufficient to entitle him to workman's compensation at the maximum rate of $20 per week; admits also that the plaintiff suffered an accident and an injury on June 18, 1938, while disconnecting a gas pipe, for which he was treated and paid compensation for a period of 8 weeks. The defendant contends, however, that plaintiff suffered only slight injury and that when his compensation was stopped, he was again in normal condition and has been in normal condition since that time.
On trial of the case the District Court found that "The evidence does not bear out the contention of plaintiff. There was a slight gas blow-out which did blow some dirt and rust into plaintiff's face and possibly in his eyes, but there was no evidence whatsoever of any impairment of his sight, and this Court is of the opinion that plaintiff is malingering and has failed to establish his claim," and accordingly rendered judgment in favor of defendant, rejecting plaintiff's demands. Plaintiff has appealed.
The only question involved in the case is whether or not plaintiff's eyesight was impaired by the admitted accident to such extent as to render him totally disabled from performing his duties as an oil field "rough neck" or any work of a similar nature. From the subjective symptoms found by the experts who testified in the case, namely: Drs. Iles, Simmonds, and Moss, it would appear that plaintiff is practically blind in his right eye, and can see but a few feet in his left eye. However, these subjective symptoms are not supported by either the objective findings of the experts nor by the actions of the plaintiff himself. All of these doctors found that the physical makeup of plaintiff's eyes was good and that as set forth in the Charity Hospital report on December 14, 1938, "Both fundii appear normal". It is true that Dr. Simmonds testified that the optic nerve of the right eye is whiter than the optic nerve of the left eye, but neither he nor the other physicians attach much importance to that fact. The Charity Hospital report contains the tentative diagnosis of "Neg." On the back of the report are written, in ink, the words "hysterical amblyopia" along with the addresses of Dr. Buffington and Dr. Beatrous, but this does not appear to be a part of the report and it is not shown by whom these words were written.
It is shown by the testimony that the plaintiff, in addition to getting around on foot without any apparent difficulty, also engaged in driving automotive trucks during his employment by Mr. J.M. Borque from November 27, 1939, to December 27, 1940. He has also engaged in other work since the accident and was at the time of trial employed by Mr. Vincent Pecorina in soliciting business for his cleaning and pressing shop. There is testimony to the effect that prior to the accident plaintiff was an expert marksman and at present is unable to hunt because of his impaired eyesight, and it is testified by his former employer, Mr. Borque, that he was in a few automobile accidents, Mr. Borque implying that such accidents were caused by poor eyesight. While this testimony tends to give the impression that plaintiff's eyesight may be slightly impaired, it does not support plaintiff's allegations and testimony to the effect that he is almost totally blind. All the medical experts testified that plaintiff could not possibly have done the things he admits having done if his eyes were in the condition revealed by his answers to questions during the various medical examinations.
With reference to alleged head injury, all the medical testimony based on examination of the head, including examination of X-rays, fails to reveal any injury whatsoever.
It is significant to note that plaintiff, through action of himself or his attorneys, was examined by Drs. Buffington, Beatrous and Gerard; that an order was obtained by plaintiff's attorneys to take testimony of Drs. Beatrous and Buffington; but that the testimony of these three experts was never obtained or introduced in evidence. Under these circumstances, it must be presumed that the testimony of these physicians would have been against plaintiff and in agreement with the medical experts who did testify in the case.
After a careful review of this record we have reached the conclusion that while plaintiff's eyesight may be slightly below normal (as admitted by the medical experts and shown by plaintiff's experience in driving automotive trucks) we cannot find that he has proved, to the legal certainty required, that he cannot now or *Page 199 
since his compensation was stopped, perform the type of work he was doing at the time of the accident, or work of a similar nature; nor can we find that such slight impairment of sight as he may have is the direct result of the accident and injury.
For these reasons we must affirm the judgment of the District Court. It is so ordered.